TOREY JOSEPH FAVAROTE (SBN: 198521)
DAVID H. DANNING (SBN: 354477)
GLEASON & FAVAROTE, LLP
3646 Long Beach Blvd., Suite 203
Long Beach, California 90807
Telephone: (213) 452-0510
Facsimile: (213) 452-0514
tfavarote@gleasonfavarote.com
ddanning@gleasonfavarote.com

Attorneys for Defendant
CORECIVIC OF TENNESSEE, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC HERRERA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC, a Tennessee limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-5858<br><br>**DEFENDANT CORECIVIC OF TENNESSEE, LLC'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1332, 1441, and 1446 DIVERSITY]<br><br>Action Filed: May 30, 2025<br>Removal Date: July 11, 2025 |

/ / /

/ / /

/ / /

/ / /

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF ERIC HERRERA, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendant CoreCivic of Tennessee, LLC (hereinafter "Defendant") hereby removes the below referenced action from Santa Clara County Superior Court in the state of California to the United States District Court for the Northern District of California. Removal is based on 28 USC sections 1332(d) (the Class Action Fairness Act), 1441(b) and 1446, as there are more than 100 proposed class members, the parties are diverse, and the amount in controversy is more than $5,000,000 as it is at least $6,715,408.00.[1]

## I. <u>DESCRIPTION OF THE ACTION.</u>

On May 30, 2025, Plaintiff, Eric Herrera, on behalf of himself and all others similarly situated, filed a putative class action complaint against Defendant in the Superior Court of California, County of Santa Clara ("Superior Court"), Case No. 25CV467123[2], wherein he alleges the following causes of action: (1) Failure to Pay Minimum and Straight Time Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Timely Pay Final Wages at Termination; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Indemnify Necessary Business Expenses; (8) Failure to Produce Requested Employment Records; and (9) Violation of Business and Professions Code Section 17200 *et. seq.* (hereinafter the "Complaint"). The Complaint was served on Defendant on June 11, 2025. (Declaration of Torey Joseph Favarote "Favarote Decl." ¶ 2, Exh A.)

---

[1] $2,903,426.40 in waiting time penalties, $2,468,900.00 in meal period and rest break premiums, and attorneys' fees (25%, $1,343,081.60) on those claims alone before considering the six other causes of action at issue in Plaintiff's lawsuit. ($2,903,426.40 + $2,468,900.00 + $1,343,081.60 = $6,715,408.00)

[2] Defendant intends on transferring venue shortly after removal, as Plaintiff admits in the Complaint he was employed by the Defendant in San Deigo County and resides in San Diego County. (Complaint ¶ 7).

Attached as **Exhibit A** to the Favarote Declaration is the complaint and service packet served on Defendant on June 11, 2025.

Attached as **Exhibit B** to the Favarote Declaration are all other documents filed in this matter in the Santa Clara County Superior Court.

## II. TIMELINESS OF REMOVAL.

The Complaint was filed on May 30, 2025, and served on Defendant on June 11, 2025. (See, Ex. A (Service of Process Transmittal and Summons). This Notice of Removal is therefore timely as the 30-day period after service would expire after July 11, 2025, and this notice has been on that date. See, 28 U.S.C. Section 1446(b) and F.R.C.P Rule 6(a)(1).

## III. DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

Removal jurisdiction is based on 28 U.S.C. section 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). In relevant part, CAFA grants federal district courts original jurisdiction over civil class-action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth herein, this case meets all of CAFA's requirements for removal, and is timely and properly removed by the filing of this Notice of Removal.

This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the primary defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and at least one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a);

Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) ("Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant."). Under CAFA, there is no presumption against removal. Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1168 (E.D. Cal. 2018).

## IV. DIVERSE CITIZENSHIP OF THE PARTIES.

CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state different from at least one defendant. 28 U.S.C. §§ 1332(d)(2).

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088 (9th Cir. 1983); see also LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); see also Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Residence is *prima facie* evidence of domicile. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

Plaintiff states in his Complaint that he is a California resident and that he worked for Defendant in Chula Vista, California. (Favarote Decl., Ex. A, Complaint, ¶ 7.) For diversity purposes, a person is a "citizen" of the state in which he is domiciled. See Kantor v. Wellesly Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Thus, Plaintiff is a citizen of the state of California. See 28 U.S.C. § 1332(a)(1) Plaintiff also seeks to represent current and former non-exempt employees of Defendant who were employed in the state of California during the putative class period. (Favarote Decl., Ex. A, Complaint, ¶ 2, 25.)

Defendant was, at the time of the filing of the state court action, and remains a limited liability corporation organized under the laws of the State of Delaware, with its principal place of business in the Brentwood, Tennessee. (Declaration of Rex Palmer Jr. "Palmer Decl.", ¶ 3.) Further, CoreCivic of Tennessee, LLC's only member is CoreCivic, Inc., a corporation organized under the laws of the State of

Maryland, with its principal place of business in the Brentwood, Tennessee. (Palmer Decl. ¶ 2.) As such, Defendant is not a citizen of the state of California.

The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. section 1441(a); Newcombe v. Adolph Coors Co., 157 F.3d 686, 690-691 (9th Cir. 1998).

Accordingly, because Plaintiff is a citizen of a state different from Defendant, minimal diversity exists for purpose of establishing jurisdiction under traditional diversity principles and under CAFA. 28 U.S.C. Sections 1332(d)(2)(A); 1453(b); Bush v. Cheaptickets, Inc., 425 F.3d 683, 684 (9th Cir. 2005).

## V. CLASS SIZE.

CAFA extends removal jurisdiction to civil actions in which the monetary relief claims of 100 or more persons are proposed to be tried jointly. Briggs v. Merck Sharp & Dohme, 796 F.3d 1038, 1047 (9th Cir. 2015) Removal under CAFA is proper when the number of members of all proposed plaintiff classes in the aggregate is greater than 100. 28 U.S.C.A. § 1332.

Plaintiff alleges in his Complaint that he seeks to represent a class of all non-exempt employees who allegedly suffered various Labor Code violations during the period four years prior to the filing of the Complaint, ostensibly March 30, 2021, to the present. (Favarote Decl., Ex. A, Complaint, ¶ 25.) Defendant's records show that the alleged class is comprised of more than 1,100 proposed class members in aggregate during the alleged class period of March 30, 2021, to the present. (Declaration of Terry Peaks "Peaks Dec.", ¶ 2.) A declaration by a company officer with knowledge of the day-to-day operations is competent and sufficient evidence to prove the number of class members and amount in controversy with reasonable certainty. Hernandez v. Nuco2 Mgmt., LLC, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018).

/ / /

/ / /

## VI. AMOUNT IN CONTROVERSY.

Pursuant to CAFA, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000. 28 U.S.C. § 1332(d)(6) (under CAFA, claims of individual class members aggregated to determine if the amount in controversy exceeds $5,000,000). The Complaint seeks to recover all allegedly unpaid minimum and straight time wages, all allegedly unpaid overtime wages; allegedly unpaid meal period and rest break premiums; reimbursement for allegedly unreimbursed necessary business expenses; associated waiting time penalties; and itemized wage statement penalties. (Ex. A, Complaint, ¶ 4 (a) through (g).) In addition to alleging Labor Code violations, Plaintiff also seeks to recover under Business and Professions Code § 17200, which has a four-year statute of limitations pursuant to Section 17208. (Favarote Decl., Ex. A, Complaint, ¶¶ 88-104.) As set forth below, the amount in controversy implicated by these class-wide allegations exceeds $5,000,000.

| **Plaintiff's Alleged Claims** | **Minimum Amount in Controversy Generated** |
|---|---|
| Waiting Time Penalties under Labor Code § 203 | $2,903,426.40 |
| Meal Period and Rest Break Premiums Under Labor Code §§ 226.7 And 512 | $2,468,900.00 |
| Attorney's Fees of 25% (on the above claims alone) | $1,343,081.60 |
| **TOTAL** | **$6,715,408.00** |

"[W]here it is unclear or ambiguous from the face of a complaint whether the requisite amount in controversy is pled," the defendant only needs to establish by a "preponderance of the evidence" that the alleged claims exceed the jurisdictional minimum. See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). Here, Plaintiff does not allege a total dollar amount in controversy in the Complaint. The amount in controversy is unclear from the face of the Complaint. Therefore, Defendant only needs to establish by a preponderance of the evidence that

the alleged claims exceed the jurisdictional minimum. See Guglielmino, 506 F.3d at 700-701; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). Defendant estimates that the amount in controversy has been met based on the competent data outlined below.

While Defendant expressly denies the validity of Plaintiff's claims and any liability for the damages sought in his Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations in Plaintiff's Complaint and presume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). Thus, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th Cir. 2010). Critically, "**[t]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.**" Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis added).

When determining whether a plaintiff's complaint meets the jurisdictional threshold, the Court should consider the allegations in the complaint and facts set forth in the Notice of Removal. See Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiffs allegations, sufficient to support finding of jurisdiction); DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); accord Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992); White v. FCI USA, Inc., 319 F. 3d 672, 674 (5th Cir. 2003) (facially apparent from the lengthy list of damages, combined with a claim for attorneys' fees, that

plaintiffs claim exceeded the jurisdictional threshold).

The requisite amount in controversy is established through an examination of the claims asserted by Plaintiff. Among other relief, Plaintiff seeks to recover waiting time penalties for all proposed class members in California under Labor Code section 203 for the alleged failure to pay all wages due at termination as well as meal period premiums, and rest break premiums. (Favarote Decl., Ex. A, Complaint, ¶¶ 51-65.) The amount in controversy in this action far exceeds the $5,000,000.00 threshold, as the amount in controversy for these three claims alone is theoretically at least $6,715,408.00.

### A. Plaintiff's Alleged Waiting Time Penalties Provide At Least $2,903,426.40 To The Amount In Controversy.

Labor Code section 203 provides for the imposition of waiting time penalties where an employer fails to timely pay all wages then due at termination. The maximum penalty for each former employee who was not paid all wages due upon departure is 30 days of wages. The statute of limitations for claims under Labor Code section 203 is three years. Cal. Lab. Code § 203; Cal. Code Civ. Proc. § 338. During the relevant time frame, May 30, 2022 (three years prior to the date the Complaint was filed) to the present, at least 336 employees left their employment with Defendant over 30 days ago at an average rate of pay of $35.27 per hour. (Peaks Decl., ¶¶ 3-4.) Using an eight-hour workday, multiplied by the average hourly rate for these former employees, multiplied by the total number of non-exempt employees who left their employment with Defendant during the relevant waiting time penalties period, multiplied by 30 days (the maximum number of days for which waiting time penalties can be imposed per former employee) or (8 hours per day × $35.27 per hour × 336 former employees × 30 days), the sum of the potential Labor Code section 203 penalties is at least $2,903,426.40 for calculating the amount in controversy.

/ / /

**B. Plaintiff's Alleged Unpaid Meal Period And Rest Break Premiums Under Labor Code Sections 226.7 And 512 Provide At Least An Additional $1,221,306.16 To The Amount In Controversy.**

Plaintiff's class action Complaint also seeks to recover premiums for allegedly unprovided meal periods and rest breaks under Labor Code sections 226.7 and 512. (Favarote Decl., Exh. A, Complaint ¶¶ 51-58.) For determining the amount in controversy, the Court must assume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.").

Plaintiff's Complaint alleges that Plaintiff and other non-exempt employees worked off the clock, worked after clocking out during each workday, and were not otherwise provided with duty free meal periods and rest breaks. (Favarote Decl., Exh. A, Complaint ¶¶ 16-18.)

Taking Plaintiff's allegations of alleged meal period and rest break violations at the rate of only 1 meal period and 1 rest break violation a pay period the unpaid meal period and rest break premium claims are **worth a minimum** of $2,468,900.00. (at least 35,000 pay periods × 2 violations [1 meal period and 1 rest break] × $35.27 average rate of pay.) For the proposed class period of May 30, 2021, to the present there are more than 35,000 pay periods worked by the class proposed in Plaintiff's complaint. (Peaks Dec., ¶ 5.)

Defendant's calculations are far **below** what courts commonly accept as reasonable. "[I]t is entirely reasonable for Defendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods" in connection with its Notice of Removal under CAFA. Elizarraz v. United Rentals, Inc., 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019); see also Dawson v. Hitco Carbon Composites, Inc., 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (holding a 50% violation rate is reasonable under CAFA.) If Defendant were to use

these cases and the violation rates courts have found to be reasonable the alleged meal period and rest break violations would be at least $4,629,187.50 before considering any other causes of action or reasonable attorney's fees. (35,000 pay periods × 3.75 violations [2.5 meal period violations and 1.25 rest break violation[3]] × $35.27 average rate of pay.)

Using only the **minimum** violation rate of 1 meal period and 1 rest break violation per pay period, combined with Plaintiff's waiting time penalties claim, and wage statement claims the amount in controversy in this matter rises to $5,372,326.40 ($2,903,426.40 waiting time penalties + $2,468,900.00 meal period and rest break claims).

### C. Using The Lowest Figures Possible For Only Three Of Plaintiff's Claims The Amount In Controversy Is More Than $6,715,408.00.

Using the lowest figures possible for Plaintiff's waiting time penalties, meal period, and rest break claims the amount in controversy is $5,372,326.40 **before considering attorney's fees**. In determining the amount in controversy, the Ninth Circuit has unambiguously and repeatedly held for almost 15 years that in wage and hour class actions courts may and must assume attorney's fees of an additional 25%.

"As we stated in Fritsch, "[w]e have long held (and reiterated [in early 2018]) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." 899 F.3d at 794. In Fritsch, **we reaffirmed that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.**" Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) citing Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 796 (9th Cir. 2018), see also Gibson v. Chrysler Corp., 261 F.3d 927, 942 (9th Cir. 2001), holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).

---

[3] A 50% and 25% violation rate respectively per week.

Adding an additional 25% to the lowest possible amounts for Plaintiff's waiting time penalties, meal period, and rest break claims **alone** the minimum amount in controversy in this action is more than $6,715,408.00 ($5,372,326.40 + an additional 25% or $1,343,081.60). All three of these claims support an award of attorney's fees. Talking Plaintiff's Complaint at its face, as the Court is required to do, the amount in controversy for only three of Plaintiff's nine claims is far more than $5,000,000.00. There is a legal certainty that the amount in controversy for CAFA removal is met.

## VII. NO BASIS FOR DECLINING JURISDICTION EXISTS.

There is no basis for this Court to decline jurisdiction. The CAFA permits a district court to decline to exercise its jurisdiction only in specified instances where a primary defendant is a citizen of the forum state. 28 U.S.C. § 1332(d)(3) and (4). Here, the defendant is indisputably not a citizen of California.

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record: John G. Yslas, Diego Vailes, Harry Erganyan, and Mariam Nazaretyan of Wilshire Law Firm.

In addition, a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Santa Clara California.

WHEREFORE, having provided notice as is required by law, the above-titled action should be removed from the Superior Court for the County of Santa Clara to this Court.

Dated: July 11, 2025

GLEASON & FAVAROTE, LLP
TOREY JOSEPH FAVAROTE
DAVID H. DANNING

/s/ Torey Joseph Favarote
Torey Joseph Favarote

Attorneys for Defendant CORECIVIC OF TENNESSEE, LLC

# PROOF OF SERVICE

I, Thomas Steinhart, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is Gleason & Favarote, LLP, 3646 Long Beach Blvd., Suite 203, Long Beach, CA 90807.

On July 11, 2025, I served a copy(ies) of the following document(s):

**DEFENDANT CORECIVIC OF TENNESSEE, LLC'S NOTICE OF REMOVAL**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| Attorney | Party(ies) Served | Method of Service |
|---|---|---|
| John G. Yslas, Esq.<br>Diego Aviles, Esq.<br>Harry Erganyan, Esq.<br>Mariam Nazaretyan, Esq.<br>WILSHIRE LAW FIRM<br>3055 Wilshire Blvd., 12th Floor<br>Los Angeles, California 90010<br>Telephone: (213) 381-9988<br>Facsimile: (213) 381-9989<br>john.yslas@wilshirelawfirm.com<br>diego.aviles@wilshirelawfirm.com<br>harry.erganyan@wilshirelawfirm.com<br>mariam.nazaretyan@wilshirelawfirm.com | Attorneys for Plaintiff ERIC HERRERA | First Class Mail |

☒ [BY MAIL] I placed the sealed envelope(s) for collection and mailing by following the ordinary business practice of Gleason & Favarote, LLP, Long Beach, California. I am readily familiar with Gleason & Favarote, LLP's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ [BY OVERNIGHT COURIER] I caused the sealed envelope(s) to be delivered by a commercial courier service for overnight delivery to the offices of the addressee(s).

☐ [BY HAND] I directed the sealed envelope(s) to the party(ies) so designated on the service list to be delivered by Ace Attorney Service, Inc. this date.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct, and that this declaration was executed on July 11, 2025, at Long Beach, California.

Thomas Steinhart